**UNITED STATES of America, Appellee,**

v.

**Ronald E. TILLEY, Defendant, Appellant.**

**No. 91–1550.**

United States Court of Appeals, First Circuit.

Heard March 3, 1992.

Decided May 15, 1992.

Dana A. Curhan, Boston, Mass., by Appointment of the Court, for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., and James E. McCarthy, Asst. U.S. Atty., Portland, were on brief, for appellee.

Before TORRUELLA, Circuit Judge, CAMPBELL and WEIS, Jr.,* Senior Circuit Judges.

TORRUELLA, Circuit Judge.

This is an appeal from the denial of a motion to withdraw a guilty plea and from a sentence imposed pursuant to the United States Sentencing Guidelines ("U.S.S.G.") in the United States District Court for the District of Maine. As we find no error in the determinations of the district court, we affirm.

* Of the Third Circuit, sitting by designation.

## FACTS

Appellant, Ronald Tilley ("Tilley") was charged in a two count indictment with (1) making a false statement in connection with the acquisition of a firearm in violation of 18 U.S.C. §§ 922(a)(6) and 924(a); and (2) illegal receipt of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On July 6, 1990, Tilley signed an Agreement to Plead Guilty and Cooperate as to count II. Pursuant to that agreement, Tilley consented to withdraw two motions to suppress dated May 24, 1990. In addition, the information Tilley provided pursuant to this agreement would be covered by a grant letter of immunity and would not be used in calculating his guideline sentence. However, in the event that the court rejected the agreement, or Tilley either withdrew his guilty plea or breached the agreement, the Government would be free to use any information Tilley provided against him.

In exchange, the Government agreed that if all the terms and conditions were met, the maximum sentence the court could impose was the maximum provided for a Level 10 offense. Should Tilley fulfill his obligations, the Government would make a non-binding recommendation that he receive a two-level reduction for acceptance of responsibility. On the other hand, if the court determined that the appropriate sentence should exceed the agreed upon level, Tilley would be permitted to withdraw his guilty plea.

Tilley alleges that pursuant to the agreement to cooperate, he called Aaron Harvey and arranged to purchase cocaine. He recorded the conversation with Harvey. Pursuant to that conversation Tilley was sent to the Harvey residence on July 26, 1990, where he made and recorded a controlled purchase of cocaine.

Subsequently, according to Harvey and two other witnesses, Tilley returned to the Harvey residence, threatened him at gun point, and took an undetermined amount of narcotics.

Tilley entered a plea of guilty on October 5, 1990. At the Rule 11 hearing, appellant, in response to detailed questioning from the district judge, acknowledged that he was aware: (1) that he was waiving his constitutional right to a speedy and public trial by jury with the assistance of counsel; [1] (2) that the maximum sentence which could be imposed under the count to which he was pleading guilty was 10 years of imprisonment and a $250,000 fine; [2] and (3) that the court had not yet decided on the sentence to be imposed. [3] Tilley also affirmed that he had discussed all of the facts of the case with his attorney; [4] that no threats or inducements had been made to ensure a guilty plea; [5] and that his decision was entirely free and voluntary. [6]

On February 8, 1991, the Government elected, pursuant to the agreement, to bring a breach of the plea agreement by Tilley to the court's attention, and to withdraw its commitments to certain ceilings in its recommendations for sentencing. The Government alleged that Tilley had perjured himself before a grand jury and at another criminal trial.

On the morning of April 10, 1991, when the court was due to sentence Tilley, he moved to withdraw his guilty plea. He claimed that a fair and just reason to grant his request existed because he could defend the charge on the basis of duress. [7] In addition, he argued that his cooperation with the Government had collapsed and thus the chance that he would be shown leniency was considerably reduced. [8] The Government offered evidence showing that Tilley failed to testify truthfully both before a grand jury and at another criminal trial, and alleged a breach of the plea agreement. The plea agreement read in pertinent part

> 7. If defendant should fail in any way to cooperate fully, honestly, truthfully and completely, then the United States may, at its discretion, be released from its commitments as set forth in this Agreement.... In the case of a failure to fully cooperate by the defendant, the United States may, in its discretion, choose either to be released from its commitments under this agreement and declare this agreement null and void, or, it may bring the failure to fully cooperate to the attention of the court and recommend at sentencing that the defendant be sentenced to the maximum penalty permitted under this agreement pursuant to paragraph 1.

Agreement to Plead Guilty and Cooperate, p. 5.

Tilley denied all allegations against him, and suggested that the only reason the Government wanted out of the agreement was because their prosecution of Harvey failed.

The district court heard testimony from three witnesses and from Tilley himself at the sentencing hearing on April 10, 1991. Subsequently, the court found that the only explanation advanced for the tardy effort to withdraw the guilty plea was Tilley's fear of the consequences of having breached his plea agreement. In addition, the court concluded that the six month delay between entry of the guilty plea and Tilley's effort to withdraw it "belies any notion that some mistake arising from haste or confusion occurred at the time of the guilty plea." [9] Also, in the district court's view, the defense of duress which Tilley wanted to assert was "not a legally cognizable defense." [10] Being satisfied that Tilley's guilty plea was voluntary, and that the Government had not breached the plea

---

1. *See* Tr. of Change of Plea Proceedings, October 5, 1990, pp. 5–6.

2. *Id.* at 5.

3. *Id.* at 14.

4. *Id.* at 4.

5. *Id.* at 12.

6. *Id.*

7. *See* Tr. of Sentencing Hearing, April 10, 1991, p. 5.

8. *Id.* at 6.

9. Order on Pending Motion, April 23, 1991, p. 2.

10. *Id.* at 3.

agreement, the court denied Tilley's motion to withdraw on April 23, 1991.[11]

At a hearing on May 31, 1991, the sentencing court reiterated its findings, after reading the Pre–Sentence Investigation Report ("PSI"), that Tilley breached the plea agreement. The court assigned an offense level of 9 pursuant to U.S.S.G. § 2K2.1(a), and denied a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). The court also found that a two-level increase was in order pursuant to U.S.S.G. § 3C1.1 because the court found that Tilley impeded the administration of justice during the investigation, presentence and sentencing of the offense. Tilley's criminal history category was IV which together with a base offense level of 11 produced a guideline range of imprisonment of 18 to 24 months. In addition, a memorandum from the Department of Probation pointed out that:

> If the Court finds that reliable information indicates that the defendant's criminal history category does not adequately reflect the seriousness of his past criminal conduct or the likelihood that the defendant will commit other crimes, the Court pursuant to § 4A1.3, may consider imposing a sentence departing from the otherwise applicable Guideline range.

*See* Memorandum by William Beck, January 17, 1991.

Accordingly, the district court concluded that Tilley's criminal history category significantly under-represented the seriousness of his criminal past and thus, departed upward from the guideline term for imprisonment of 18 to 24 months to impose a sentence of 54 months. Fines were waived, but a $50 felony assessment was imposed.[12]

Tilley appeals from the sentenced imposed and the denial of his motion to withdraw his guilty plea.

**11.** *Id.* at 4. On May 21, 1991, appellant filed another motion to withdraw his guilty plea. The district court denied the motion on May 23, 1991.

**12.** On that same day, the defendant moved for a stay of execution of the judgment. The district court denied that motion on June 6, 1991.

## LEGAL ANALYSIS

### I. Violation of Plea Agreement

Appellant asserts that his breach of the plea agreement, if any, was minor. He further contends that the Government itself violated both the spirit and the letter of the plea agreement when it publicized his cooperation in the local newspaper.[13] Thus, according to appellant, the district court should have enforced the terms of the plea agreement, or in the alternative, should have allowed the defendant's motion to withdraw his guilty plea.

■■■ The Supreme Court has stated that the Government may not breach any term of a plea agreement which induced a defendant to plead guilty. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). Accordingly, when a defendant has entered into a plea agreement with the Government, the court must ensure that he/she receives what is reasonably due him/her under the agreement. *United States v. González–Sánchez*, 825 F.2d 572, 578 (1st Cir.), *cert. denied*, 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987). Thus, if a defendant lives up to his/her end of the bargain, the Government is bound by its promises. *Id.* (citing *United States v. Garcia*, 698 F.2d 31, 37 (1st Cir.1983). However, if a defendant fails to fulfill his/her promises, the Government is released from its obligations under the agreement and may indict and try the defendant regardless of whatever it may have promised earlier. *Id.* (citing *United States v. Baldacchino*, 762 F.2d 170, 179 (1st Cir.1985); *Ricketts v. Adamson*, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987)).

■■■ This circuit has established that the factual determination of whether there has been a breach of the plea agreement

**13.** As discussed *infra*, no evidence, except for appellant's testimony, was presented to this effect.

lies with the trial judge. *Panzardi–Alvarez v. United States*, 879 F.2d 975, 987 (1st Cir.), *cert. denied*, 493 U.S. 1082, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990) (citing *González–Sánchez*, 825 F.2d at 578); *McAleney v. United States*, 539 F.2d 282, 284 (1st Cir.1976) (citation omitted). This court will not reverse the factual determinations of a district court in relation to the breach of a plea agreement unless it is clearly erroneous. *Id.*

■ Here, the district court concluded that appellant Tilley violated the terms of his plea agreement, and consequently released the Government from its obligations under it. We review the findings of the district court for clear error.

The district court here held an evidentiary hearing on the issue of whether or not Tilley had violated his plea agreement, properly allocating the burden of proof to the Government to show that there had been a substantial breach of the plea agreement, *see González–Sánchez*, 825 F.2d at 578, and asking that they do so by a preponderance of the evidence. *See United States v. Verrusio*, 803 F.2d 885, 891 (7th Cir.1986). The court heard testimony from three witnesses, including Aaron Harvey,[14] all of whom testified that Tilley visited Harvey a second time, on July 28, 1991.[15] According to Harvey's testimony, Tilley pulled a gun on him and demanded whatever amount of cocaine Harvey had leftover from the July 26 purchase. Two other witnesses testified as to Tilley's presence at Harvey's residence on July 28, 1990, and one of these two witnesses corroborated Harvey's story that Tilley pulled a gun on him during that second visit. Tilley, also testified at this hearing and insisted that he did not visit Harvey a second time. This had also been Tilley's testimony at the grand jury, and at Harvey's trial. Based on a preponderance of the evidence, the district court found that appellant Tilley provided false testimony before a grand jury; at a subsequent criminal trial; and at the sentencing hearing; and thus found him to be in violation of his plea agreement.[16] The plea agreement signed by Tilley provided in paragraph four:

> 4. Defendant further agrees to testify fully, honestly, truthfully and completely at any and all grand juries, trials or court proceedings in which his testimony is requested, in the District of Maine, or any other districts.

Agreement to Plead Guilty and Cooperate, p. 3. Upon finding Tilley in violation of the plea agreement, the district court released the Government from its obligations pursuant to it and found that it was proper under the plea agreement for the Government to bring Tilley's failure to cooperate to the attention of the sentencing court.[17]

We are not convinced that the sentencing court committed clear error in concluding, as a factual matter, that Tilley did not live up to his end of the bargain, and violated his plea agreement. The trial judge had discretion to believe the other three witnesses regarding the second visit of Tilley to Harvey's residence, rather than Tilley. As there is sufficient evidence on the record to support the district court's factual finding we affirm. *See U.S. v. Pellerito*, 878 F.2d 1535, 1538 (1st Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 184, 116 L.Ed.2d 145 (1991) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.") (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).

---

**14.** The other two witnesses were Diane Kelleher, Harvey's girlfriend, and Linda Colavecchio, a friend of both Harvey and Kelleher. *See* Tr. Sentencing Hearing, April 10, 1991, pp. 34 and 51.

**15.** As related in the fact section, Tilley arranged a meeting with Harvey for the purchased of cocaine. The purchased took place on July 26, 1990, under police surveillance.

**16.** *See* Order on Pending Motion, April 23, 1991, pp. 6–7.

**17.** Under paragraph 7 of the plea agreement the Government had the option to declare the agreement null and void, or to bring the failure to fully cooperate to the attention of the court. Agreement to Plead Guilty and Cooperate, p. 5.

Appellant Tilley further argues that the Government breached the plea agreement by releasing his name to the press as a police informant. Tilley provided testimony to this effect at the evidentiary hearing held by the district court.[18] However, we find that the district court was entitled to find that appellant's testimony was not credible, especially in light of his faulty testimony as to other events.' As Tilley has introduced no other evidence showing a breach of the plea agreement by the Government, we find no clear error on the part of the district court.

## II. Withdrawal of Guilty Plea

Having found no clear error on the part of the district court in finding a breach by Tilley of the plea agreement, we consider whether the district court nevertheless abused its discretion when it denied appellant Tilley's motion to withdraw his guilty plea. *United States v. Daniels*, 821 F.2d 76, 78 (1st Cir.1987).

We note at the outset that having chosen to plead guilty, a defendant possesses no absolute right to retract his/her plea. *Pellerito, supra*, 878 F.2d at 1537 (citing *United States v. Buckley*, 847 F.2d 991, 998 (1st Cir.1988), *cert. denied*, 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989) and *United States v. Kobrosky*, 711 F.2d 449, 454 (1st Cir.1983)). When a defendant wishes to withdraw his guilty plea, the rule of decision depends upon the timing of the attempt. When, as here, a defendant seeks to withdraw his plea just prior to sentencing, the court should permit withdrawal if there is a "fair and just reason" for doing so. Fed.R.Crim.P. 32(d). *See also Pellerito*, 878 F.2d at 1537; *Buckley*, 847 F.2d at 998; *Kobrosky*, 711 F.2d at 454. Such a determination will be set aside on appeal only if the appellant convinces us that the court below abused its discretion. *Kobrosky*, 711 F.2d at 454 (citations omitted).

In determining whether a fair and just reason exists, a number of factors should be weighed, including

(1) the timing of defendant's change of heart;

(2) the force and plausibility of the reason;

(3) whether the defendant has asserted his legal innocence;

(4) whether the parties had reached (or breached) a plea agreement; and

(5) most importantly, whether the defendant's guilty plea can still be regarded as voluntary, intelligent, and otherwise in conformity with Rule 11 of the Federal Rules of Criminal Procedure in light of the proffered reason and the disclosed circumstances.

*Pellerito*, 878 F.2d at 1537 (citations omitted). Also, due consideration must be given by the district court to whether the Government will suffer undue prejudice as a result of the withdrawal. *Kobrosky*, 711 F.2d at 455.

In this case, appellant signed an agreement to plead guilty on July 6, 1990. He entered his guilty plea during a Rule 11 hearing on October 5, 1990, where the judge questioned appellant thoroughly regarding the constitutional rights he was waiving.[19] Appellant received a copy of his PSI on or about November 23, 1990. He was on notice of the Government's intention to bring to the district court's attention all relevant factors and recommend any sentence up to the statutory maximum as of February 28, 1991.[20] Appellant had nine months to evaluate his guilty plea. His decision to change his plea on the morning of the sentencing hearing certainly does not constitute the "swift change of heart" envisioned by the First Circuit. *U.S. v. Ramos*, 810 F.2d 308, 313 (1st Cir.1987). In fact, appellant alleges no misunderstanding whatsoever of the plea agreement or the consequences of entering a guilty plea. Rather, he submits that a "breakdown" in the cooperation between he and

---

**18.** *See* Tr. of Sentencing Hearing, April 10, 1991, p. 75.

**19.** *See* Tr. of Change of Plea Proceeding, October 5, 1990.

**20.** *See* Government Response to Procedural Order of January 23, 1991.

the Government had occurred, and reasoned that, in light of the testimony which two witnesses provided in a prior trial, and would presumably provide in his sentencing hearing, it was in his best interest to withdraw his guilty plea and assert the defense of duress at trial.[21]

Appellant asserts no defense on appeal, except to suggest that since he did in fact cooperate with the Government in other criminal investigations, the court should have compelled the Government to comply with the plea agreement, or in the alternative allow him to withdraw his plea.[22] In following this line of argument, appellant overlooks the fact that he did indeed violate the plea agreement by engaging in behavior which constitutes a crime in and of itself—perjury.[23] In view of a violation by appellant of the plea agreement, the Government was entitled to bring all factors related to said violation to the attention of the court.[24]

Moreover, at no time during the entire proceedings before the district court has appellant asserted his legal innocence.[25] Nor has he given the court any indication that his guilty plea was anything other than voluntary or intelligent. In addition, the district court fully spelled out the charges against Tilley, their elements, the penalties therefor, the evidence the Government would offer to prove the case, and the constitutional rights he would be waiving by pleading guilty. Thus, in light of the fact that appellant had nine months during which to consider the consequences of his guilty plea; the absence of a viable defense; appellant's breach of the plea agreement and the apparent lack of evidence pointing to appellant's innocence, we find that the district court did not abuse its discretion in denying appellant's motion to withdraw his guilty plea.

### III. U.S.S.G. § 4A1.3

■ Appellant also challenges his sentence on the ground that the trial judge abused his discretion in departing from the sentencing guideline providing for a criminal history category of IV, pursuant to United States Sentencing Guideline § 4A1.3. The PSI placed appellant in criminal history category IV, with a sentencing range of 18 to 24 months of imprisonment. However, the district court concluded that neither category IV, V nor VI adequately reflect the likelihood of further criminal activity by appellant. Thus, the court departed from the sentencing guidelines and sentenced appellant to 54 months of incarceration, noting "that increasing the criminal history by one or even two categories still fails to reflect adequately the likely recidivism." [26]

Under the Sentencing Reform Act, a district court may depart from the Guidelines if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." *United States v. Díaz–Villafañe*, 874 F.2d 43, 49 (1st Cir.), *cert. denied*, 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989) (citing 18 U.S.C.

---

**21.** More specifically, appellant's counsel stated at the Sentencing Hearing:

I got the transcripts of the testimony of the different witnesses which was said (sic) in the prior trial. We evaluated those transcripts late last night, and based upon all the information that we had in front of us, Mr. Tilley strongly is pursuing for (sic) me to file his—a motion to withdraw his plea.

Tr. Sentencing Hearing, May 31, 1991, pp. 7–8.

**22.** Appellant introduced the defense of duress through his motion to withdraw his guilty plea before the district court. However, he does not argue this defense on appeal, thus we will not address it here.

**23.** Defendant also committed other crimes while waiting for the resolution of his case. *See* Memorandum by William B. Beck, May 20, 1991. This in and of itself constituted a breach of the plea agreement. *See* Agreement to Plead Guilty and Cooperate, pp. 5–6.

**24.** *See* Agreement to Plead Guilty and Cooperate, p. 5.

**25.** *See* Tr. Change of Plea Proceeding, October 5, 1990, p. 4.

**26.** Memorandum of Sentencing Judgment, May 31, 1991, p. 7.

§ 3553(b); *United States v. Russell*, 870 F.2d 18 (1st Cir.1989) (per curiam)).

> The Commission intends the sentencing court to treat each guideline as carving out a "heartland," a set of typical case embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted ... [T]he Commission does not intend to limit the kinds of factors (whether or not mentioned anywhere else in the guidelines) that could constitute grounds for departure in an unusual case.

*Id.* (citing Manual § 1A4(b) at 1.6–1.7).

■ Accordingly the First Circuit has stated that "[a]ppellate review of an upward adjustment in criminal history category involves a three step process." *United States v. Madrid*, 946 F.2d 142, 143 (1st Cir.1991); *United States v. Polanco-Reynoso*, 924 F.2d 23, 24 (1st Cir.1991); *United States v. Brown*, 899 F.2d 94, 96 (1st Cir. 1990); *Diaz–Villafañe*, 874 F.2d at 49. We must determine (1) whether the circumstances relied upon by the district court were sufficiently "unusual" to warrant departure; (2) whether the circumstances relied upon actually existed; and (3) whether, in light of those existing unusual circumstances, the departure was reasonable. *Diaz–Villafañe*, 874 F.2d at 49; *see also United States v. Joan*, 883 F.2d 491, 494 (6th Cir.1989) (adopting the First Circuit three-step analysis in departure cases).

Appellant argues that here the district court failed to satisfy the first part of this test. The court stated that it based the departure on the appellant's alleged theft of a check from his employer, stating that it was "one more incident in a long history of negotiating worthless instruments and forgery." However, according to appellant, the court failed to explain why that behavior warranted the departure. In particular, appellant asserts, the court did not explain why it found the defendant's potential for recidivism to be significantly more serious than that of most category IV defendants. Further, appellant submits, the court never explained why a sentence outside the guidelines was more appropriate than a sentence in category V or category VI. In light of the lack of an explanation on the part of the court for the departure, appellant submits that to the extent that the court cited any circumstances for departure, these were not unusual enough to warrant departure, and that said departure was unreasonable, especially, since the underlying offense involved no violence, nor did it encompass a large sum of money.[27] Moreover, the harm from the activity was relatively limited in scope, and in fact, the victim apparently declined to press charges.

After carefully reviewing the record in this case we find that the district court found sufficiently unusual circumstances to depart from the proper sentencing guideline range.

There are several misstatements in appellant's argument. First, at the very beginning of the district court's Memorandum and Order, dated May 31, 1990, the court clearly adopted the facts as related by the PSI. These facts related the extensive criminal history of Tilley in negotiating worthless instruments, which the court cited as one of the reasons for its departure from criminal history category IV.[28] According to the PSI appellant was convicted for (1) one count of arson in 1979, for which he served only 30 days; (2) two counts of negotiating worthless instruments in 1981, for which he incurred a $50 fine on each count; (3) one count of forgery in 1982 for which he incurred a $50 fine; (4) three counts of negotiating worthless instruments in 1984 for which he was sentenced to three years imprisonment; and (5) one count of forgery in 1984 for which he was sentenced to three years of imprisonment to run concurrently to the prior sentence. Appellant was released

---

**27.** Here appellant refers to another offense committed by appellant while the present case was pending.

**28.** *See* Memorandum of Sentencing Judgment, May 31, 1990, p. 15.

from custody in October of 1986.[29] A subsequent memorandum from the Department of Probation reveals yet another conviction for assault in 1991, for which he was sentenced to thirty days, all suspended.[30] This memorandum also contained an incident report prepared by the Bangor Police Department alleging that Tilley was responsible for the theft and forgery of a check.[31] Tilley later admitted to these acts in a letter to the proper owner of the check, Gary Inman.[32]

Further, the court cited appellant's criminal behavior while on pretrial release. Specifically, the district court found that appellant provided false testimony before grand jury proceedings, before a district court in another criminal trial, and at his own sentencing hearing. Moreover, the theft and forgery of the check mentioned in the memorandum from the Department of Probation dated May 20, 1991, occurred after the court had found him in violation of his plea agreement due to his perjured testimony and while Tilley was awaiting sentencing. About this the court commented in its order as follows:

> It might be expected that *most criminal defendants while on pretrial release under a pending federal charge would be exceptionally careful to avoid criminal involvement.* This defendant's experience to the contrary suggests the extraordinary high likelihood of future criminal involvement, different from ordinary defendants who might be in Criminal History Category IV. It is apparent that this defendant currently has a complete inability to be a law-abiding citizen.

(Emphasis added). Clearly the district court had sufficient reason to be concerned about appellant's non-ending criminal behavior. In its opinion, the district court found that the fact that Tilley would disregard the seriousness of the charges against him to the extent of once again

engaging in criminal behavior while on pretrial release was unusual enough to depart from the sentencing guidelines. We agree.

Sentencing Guideline § 4A1.3 specifically allows the district court to depart from the guidelines where

> ... reliable information indicates that the criminal history category does not adequately reflect *the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes.*

(Emphasis added). Clearly this appellant's criminal history, as well as his behavior during pretrial release was sufficiently unusual to justify, factually and legally the district court's upward departure from Criminal History Category IV.

In determining reasonableness, the court should consider relevant factors, including (1) the seriousness of the defendant's past criminal conduct; (2) the likelihood of recidivism; (3) prior similar adult conduct not resulting in criminal convictions; (4) previous lenient sentences for serious offenses; (5) and whether the sentence will have deterrence on future criminal conduct. *Joan,* 883 F.2d at 496.

A review of the record in this case shows that the court took many of these factors into consideration in its decision to depart. More specifically the district court cited the great likelihood that appellant would once again engage in criminal behavior, and the seriousness of appellant's past criminal conduct.[33] The PSI report also shows the unusual leniency which appellant has received from prior sentencing courts, similar conduct not resulting in convictions and the failure of said sentences in deterring appellant from engaging in criminal conduct.[34]

We hold that the district court in this case took into account the relevant factors and circumstances, and find sufficient evidence in the record to support the district

---

29. Pre–Sentence Investigation Report, pp. 12–13.

30. Memorandum by William B. Beck, May 20, 1991.

31. Incident Report, dated May 20, 1991.

32. Letter by Ron Tilley to Gary Inman.

33. *See* Memorandum of Sentencing Judgment, May 31, 1991, p. 7.

34. *See* Pre–Sentence Investigation Report, pp. 12–13.

court's action in this case. "The controlling decision as to whether and to what extent departure is warranted can only be made by the court at the time of sentencing." [35] We will not curtail the district court's discretion to impose sentence unless it is clearly beyond the realm of reasonableness. The district court's action in this case was not.

Thus, the decision of the district court is *affirmed.*

**35.** Manual § 5K2.0, Grounds for Departure at 5.36.