[Nos. 17297-6-II; 17371-9-II. Division Two. August 10, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. TYRONE F. THOMAS, *Appellant*.

*Ronald D. Ness* and *Ronald D. Ness & Associates*, for appellant.

*Russell D. Hauge, Prosecuting Attorney*, and *Pamela B. Loginsky, Deputy*, for respondent.

MORGAN, J. — Tyrone F. Thomas appeals convictions for first degree rendering criminal assistance and first degree robbery. The state cross-appeals the calculation of his offender score. We reverse and remand.

On May 11, 1992, two men robbed Goldberg's Jewelry store in Silverdale. Each wore a stocking mask and carried a gun. Five months later, in early October, Thomas told police that he was the driver of the getaway car.

On October 13, 1992, Thomas and the State entered into a written plea agreement with several provisions pertinent here. The agreement provided that Thomas would plead guilty to a charge of first degree rendering criminal assistance; that his offender score was 4 and his standard range twenty-two to twenty-nine months in prison; and that the State would recommend twenty-nine months. It further provided:

> The State agrees to file no further charges or sentence enhancements as to this incident (and: No additional charges arising from the May 11, 1992, robbery at Goldberg's Jewelry, or any related non-violent offenses).

Clerk's Papers at 7. It also provided:

> The defendant agrees to fully and truthfully cooperate with law enforcement agents concerning their investigation of the May 11, 1992, robbery of Goldberg's Jewelry and any related unlawful activity. He further agrees to testify fully and truthfully at any trials or proceedings if called upon to do so by the State of Washington, subject to prosecution for perjury for not testifying truthfully. The defendant further understands that he remains liable and subject to prosecution for his role in the Goldberg's robbery and any related criminal activity of which he does not fully advise agents of the State.

Clerk's Papers at 9.

On October 15, the State charged Thomas with one count of first degree rendering criminal assistance. On October 19, the trial court approved the written plea agreement, and Thomas pleaded guilty.

On December 9, 1992, the State called Thomas as a witness in the trial of Greg Swan, who was charged with robbing Goldberg's. Thomas refused to answer questions, claiming his Fifth Amendment rights.

On January 19, 1993, the State moved for an order declaring that Thomas had breached his plea agreement. After a hearing, the trial court orally ruled "that the agreement was that Mr. Thomas was going to testify truthfully about this robbery"; "that he did not"; "that the agreement was violated"; and "that the decision to terminate the plea agreement was a reasonable decision by the prosecutor's office."[1] The prosecutor responded:

> Your Honor, I want to make it clear that the State wasn't seeking to vacate the plea agreement. In fact, the State is asking that we set a sentencing hearing for Mr. Thomas as to the charge of rendering criminal assistance. The State needed the judicial finding that he had violated a condition of the plea agreement in order to consider further charges.

Report of Proceedings (Feb. 18, 1993) at 3. Consistent with these remarks, the trial court's findings and conclusions, entered on April 12, state only "[t]hat by refusing to

---

[1]Report of Proceedings (Feb. 18, 1993) at 2-3.

testify against Greg Swan . . . , the defendant violated the conditions of his Plea Agreement in this cause."[2]

On March 29, 1993, Thomas moved to withdraw his guilty plea. The State opposed the motion, which the trial court denied on April 12.

On April 16, 1993, the State charged Thomas with the first degree robbery of Goldberg's. Thomas moved to dismiss the new charge, contending in part that it violated his due process rights under the plea agreement. The trial court denied this motion in June.

Also in June, a nonjury trial was held on stipulated facts, and Thomas was found guilty of robbing Goldberg's. Thus, on July 2, 1993, he was brought before the court for sentencing on the verdict of first degree robbery and on his plea to first degree rendering criminal assistance.

At the sentencing hearing on July 2, a dispute arose over Thomas' offender score and standard range. As already noted, the plea agreement stated that for purposes of first degree rendering criminal assistance, Thomas' offender score was 4 and his standard range twenty-two to twenty-nine months. Between the plea in October and the sentencing in July, however, Thomas had been convicted of three new felony assaults. The State asked that these be included in his offender score for the rendering conviction, thus giving him a score of 7 and a standard range of fifty-one to sixty-eight months. Refusing this request, the trial court imposed concurrent standard range sentences of 108 months for robbery and twenty-nine months for rendering. Thomas appeals and the State cross-appeals.

## I

Thomas argues that he did not breach his plea agreement. Thus, he says, he can specifically enforce its prohibition against the filing of additional charges arising from the robbery of Goldberg's.

█ Like the trial court, we think that Thomas breached

---

[2]Clerk's Papers at 28.

his plea agreement. When he entered into the plea agreement, he promised "to testify fully and truthfully at any trials or proceedings if called upon to do so by the State of Washington, subject to prosecution for perjury for not testifying truthfully." On December 9, he refused to testify after being called by the State. This refusal was a material breach of his agreement, and because of it, he has no right to specifically enforce the agreement. *In re James*, 96 Wn.2d 847, 850, 640 P.2d 18 (1982) (defendant's right to specifically enforce "exists provided the defendant has complied with the agreement"), *review denied*, 100 Wn.2d 1023 (1983); *State v. Hall*, 32 Wn. App. 108, 110, 645 P.2d 1143, *review denied*, 97 Wn.2d 1037 (1982) ("The State is expected to keep its bargains unless the defendant has failed to keep his or hers."); *State v. Gilchrest*, 25 Wn. App. 427, 428, 607 P.2d 1243 (1980) (plea agreement required defendant to successfully complete treatment program; defendant not entitled to enforce agreement after failing to complete program).

## II

Thomas next argues that even if he breached the plea agreement, the State is prohibited from charging him with the robbery of Goldberg's. He reasons that if he breached, the State can elect to enforce or rescind the agreement; that the State has elected to enforce; and that the State, because of its election, must content itself with the agreement's provisions, including the prohibition against charging the Goldberg robbery.[3]

 Just as a defendant has the option to specifically enforce or rescind a plea agreement after a breach by the State, *State v. Miller*, 110 Wn.2d 528, 531, 756 P.2d 122

---

[3]The difference between this contention and the previous one is the difference between Thomas' right to specifically enforce and the State's right to specifically enforce. In making the previous contention, Thomas was asserting his own right to specifically enforce the plea agreement. In making the present contention, Thomas assumes the State's right to specifically enforce the plea agreement, but asserts that right was overreached when the State charged him with robbing Goldberg's.

(1988), *State v. Tourtellotte*, 88 Wn.2d 579, 585, 564 P.2d 799 (1977), the State has the option to specifically enforce or rescind a plea agreement after a breach by the defendant.

> It is now well settled that, when the government breaches a plea agreement, a defendant's remedy is either specific performance of the plea agreement or an opportunity to withdraw his guilty plea. *Santobello v. New York*, 404 U.S. 257, 263-63, 92 S. Ct. 495, 499, 30 L. Ed. 2d 427 (1971); *United States v. Brody*, 808 F.2d 944, 947 (2d Cir. 1986); *see also United States v. Abbamonte*, 759 F.2d at 1071-72. The question presented for review today is whether, when the situation is reversed and it is the defendant who has breached the agreement, specific performance is a possible remedy for the government. We hold that it is.

*United States v. Alexander*, 869 F.2d 91, 94 (2d Cir. 1989).[4] In addition, many cases hold that when a defendant has breached a plea agreement, the State may rescind it. *United States v. Ballis*, 28 F.3d 1399, *reh'g denied*, 39 F.3d 322 (5th Cir. 1994); *United States v. Tilley*, 964 F.2d 66, 70 (1st Cir. 1992); *United States v. Ataya*, 864 F.2d 1324 (7th Cir. 1988); *United States v. Reardon*, 787 F.2d 512 (10th Cir. 1986); *United States v. Wood*, 780 F.2d 929 (11th Cir.), *cert. denied*, 479 U.S. 824 (1986); *People v. McCormick*, 859 P.2d 846 (Colo. 1993); *e.g., Spivey v. State*, 553 N.E.2d 508 (Ind. Ct. App. 1990); *State v. Hovind*, 431 N.W.2d 366 (Iowa 1988); *State v. Rivest*, 106 Wis.2d 406, 316 N.W.2d 395 (1982); *see Ricketts v. Adamson*, 483 U.S. 1, 107 S. Ct. 2680, 97 L. Ed. 2d 1 (1987) (State rescinded agreement following defendant's breach; reinstatement of original charge did not violate double jeopardy).

When the State opts to rescind a plea agreement, its subsequent rights are measured by law; but when it opts to specifically enforce, its subsequent rights are necessar-

---

[4]In *Alexander*, the defendant agreed to plead guilty to three of forty counts, and to forfeit his assets. At sentencing, the government claimed he had not surrendered all his assets, and it asked for an order of specific performance. As noted in the text, the First Circuit ruled that specific performance was an available remedy.

ily measured by the agreement itself. Thus, in *State v. Toliver*, 187 Wis.2d 346, 523 N.W.2d 113, *review denied*, 527 N.W.2d 334 (Wis. 1994), Toliver and the State formed a plea agreement in which Toliver agreed to plead guilty to two out of four counts and testify against a codefendant named Banks. The State agreed to dismiss the remaining two counts and recommend eight years in prison. In paragraph ten, the agreement further provided:

> In the event that Brian Toliver refuses to testify at the trial of DeAngelo Banks the State will be free to recommend any period of incarceration, including the maximum . . . , or to proceed against him in any other charges it deems appropriate under the circumstances . . . .

Toliver later refused to testify at Banks' trial, and his motion to withdraw his pleas was denied. He then appeared for sentencing, and the State recommended ten to twelve years in prison. The court imposed fourteen years, and Toliver sought relief. Denying relief, the appellate court ruled that because Toliver was the one who had breached, the State was entitled to enforce the plea agreement according to its terms, and "[t]he State was following the sanction proviso of paragraph ten when it gave its sentencing recommendation." *Toliver*, 187 Wis.2d at 358.

Similarly, in *United States v. Tilley*, Tilley was charged with two firearms crimes. In a written plea agreement, he agreed to plead guilty and cooperate with the government, and the government agreed to recommend certain ceilings on his sentence. The agreement also provided:

> In the case of a failure to fully cooperate by the defendant, the United States may, in its discretion, choose either to be released from its commitments under this agreement and declare this agreement null and void, or, it may bring the failure to fully cooperate to the attention of the court and recommend at sentencing that the defendant be sentenced to the maximum penalty permitted under this agreement pursuant to paragraph 1.

After Tilley failed to cooperate as agreed, the government "elected, pursuant to the agreement, to bring a breach of the plea agreement by Tilley to the court's at-

tention, and to withdraw its commitments to certain ceilings in its recommendations for sentencing." *Tilley*, 964 F.2d at 66. Tilley moved to withdraw his pleas, but the motion was denied. The district court imposed a sentence in excess of the federal sentencing guidelines, and Tilley appealed. Affirming, the First Circuit held, in essence, that the government was permitted to enforce the agreement according to its terms, and that the district court had not erred by denying Tilley's motion to withdraw his pleas.

In the present case, the State unequivocally elected to enforce rather than rescind the plea agreement. It so stated to the trial judge on February 18, 1993, and to this court during oral argument. Moreover, it manifested its election by opposing, successfully, Thomas' motion to withdraw his plea.

█ The State having elected to specifically enforce the plea agreement, its rights are measured by the terms thereof. In general, we read those terms as we would a contract. *United States v. Alexander*, 869 F.2d at 95; *see State v. Hall*, 104 Wn.2d 486, 706 P.2d 1074 (1985) ("petitioner had a right analogous to a contract right once the plea bargain was entered"). However, we cannot read any term in a way the defendant did not understand at the time of the entry of the plea. "Unlike some commercial contracts, plea agreements must be construed in light of the rights and obligations created by the Constitution," *Ricketts v. Adamson*, 483 U.S. at 16 (Brennan, J., dissenting), and under the constitution a plea is valid only if the defendant understands its consequences at the time it is entered. *Haring v. Prosise*, 462 U.S. 306, 319, 103 S. Ct. 2368, 76 L. Ed. 2d 595 (1983) (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970)).

As already noted, the plea agreement in issue here stated:

> The State agrees to file no further charges or sentence enhancements as to this incident (and: No additional charges

arising from the May 11, 1992, robbery at Goldberg's Jewelry, or any related non-violent offenses).

Clerk's Papers at 7. It also stated:

> The defendant agrees to fully and truthfully cooperate with law enforcement agents concerning their investigation of the May 11, 1992, robbery of Goldberg's Jewelry and any related unlawful activity. He further agrees to testify fully and truthfully at any trials or proceedings if called upon to do so by the State of Washington, subject to prosecution for perjury for not testifying truthfully. The defendant further understands that he remains liable and subject to prosecution for his role in the Goldberg's robbery and any related criminal activity of which he does not fully advise agents of the State.

Clerk's Papers at 9.

The longer paragraph has three sentences. Construing the second sentence, the State says the agreement imposed on Thomas an obligation to testify fully and truthfully. Construing the third sentence, the State says that if Thomas breached his obligation to testify fully and truthfully, it regained its right to charge the Goldberg robbery. In other words, the State construes the third sentence to mean that if Thomas breached his obligation to testify, the State was relieved of its obligation, established earlier in the agreement, not to file "additional charges arising from the May 11, 1992, robbery at Goldberg's Jewelry."

The words used in the agreement do not support the State's construction of the third sentence. The first sentence says that Thomas has an obligation to fully and truthfully cooperate with law enforcement agents; it says nothing about what will happen if Thomas breaches this obligation. The third sentence reiterates, at least by implication, that Thomas has an obligation to "fully advise agents of the State;" it goes on to state that if Thomas breaches his obligation to fully advise, "he remains liable and subject to prosecution for his role in the Goldberg's robbery." The second sentence says that Thomas has an obligation to testify fully and truthfully; it goes on to state that if Thomas breaches his obligation to testify fully and

truthfully, he will be subject to prosecution for perjury. None of the sentences says or implies that the same type of breach will beget the same type of remedy, and none states or implies that if Thomas breaches his obligation to testify fully and truthfully, he will be subject to prosecution for the Goldberg's robbery. Moreover, even if the language could be stretched that far, nothing in the record shows that Thomas, at the time he entered his plea, was advised of or understood the meaning that the State now ascribes to the third sentence.

Summarizing to this point, we hold that Thomas breached the plea agreement by refusing to testify. As a result, the State had the option of rescinding or enforcing the agreement. The State elected to enforce, in part by opposing Thomas' motion to withdraw his plea. Under the agreement, one of the State's obligations was not to file additional charges based on the Goldberg robbery. Due to the agreement's peculiar language, that obligation was not abrogated by Thomas' refusal to testify, and the State could not both hold Thomas to his plea and charge the Goldberg robbery. The robbery conviction must be dismissed.[5]

### III

On its cross-appeal, the State contends that the trial court erred in calculating Thomas' offender score. We agree. The offender score for rendering criminal assistance includes one point for "each adult prior felony conviction." RCW 9.94A.360(8). "A prior conviction is a conviction which exists before the date of sentencing for the offense for which the offender score is being computed." RCW 9.94A.360(1); *State v. Collicott*, 118 Wn.2d 649, 665,

---

[5]At oral argument, the State contended that specific performance is an imperfect remedy under these circumstances, and that its use here allows Thomas to breach his plea bargain without suffering any penalty. Specific performance is available to a nonbreaching party even when it is not a perfect remedy, *In re Palodichuk*, 22 Wn. App. 107, 112-13, 589 P.2d 269 (1978), and its use here was a matter for the State to consider before making its election to enforce rather than rescind the plea agreement.

827 P.2d 263 (1992). Thomas' three postplea, presentencing assault convictions were "prior convictions" within the meaning of this definition. Thus, they should have been included in his offender score, and his standard range for rendering was fifty-one to sixty-eight months.

This conclusion is not affected by the fact that the plea agreement said Thomas' standard range would be twenty-two to twenty-nine months, or by the fact that the State elected to enforce rather than rescind the plea agreement. In accordance with CrR 4.2(g)(6)(d), the plea agreement provided:

> If I am convicted of any new crimes before sentencing, or if any additional criminal history is discovered, both the standard sentence range and the prosecuting attorney's recommendation may increase. Even so, my plea of guilty to this charge is binding on me. I cannot change my mind if additional criminal history is discovered even though the standard sentencing range and the prosecuting attorney's recommendation increase.

Clerk's Papers at 4. The State was entitled to enforce this provision along with the rest of the agreement, and thus to have the trial court sentence in light of a standard range that included Thomas' three postplea convictions for assault.

We deny the State's request for recoupment of the costs associated with Thomas' indigent defense. *State v. Kuhn*, 74 Wn. App. 787, 792-93, 875 P.2d 1225 (1994).

We reverse the robbery conviction. We affirm the rendering conviction, but reverse the sentence. The robbery count is remanded with directions to dismiss, and the rendering count is remanded with directions to resentence.

HOUGHTON, A.C.J., and BRIDGEWATER, J., concur.