35 P.3d 397 (2001)
STATE of Washington, Appellant,
v.
Robert Joseph ARMSTRONG, Respondent.
No. 26312-2-II.
Court of Appeals of Washington, Division 2.
December 7, 2001.
*398 Randall Avery Sutton, Kitsap Co. Deputy Pros. Atty., Port Orchard, for Appellant.
Clayton Ernest Longacre, P. Thomas Adams, Port Orchard, for Respondent.
BRIDGEWATER, J.
The State appeals the trial court's ruling that when a defendant violates a plea agreement, it must allow him to withdraw his guilty plea before it can file new charges, despite language in the plea agreement to the contrary. We reverse, holding that the defendant's violation both prevented his withdrawal of his guilty plea and permitted the State to file additional charges.
In November 1999, Robert Joseph Armstrong pleaded guilty to second degree malicious mischief. In exchange for Armstrong's plea, the State agreed to forego sentence enhancements and additional charges, including residential burglary and harassment.
Armstrong later failed to appear for sentencing. The State then filed a notice of violation of plea agreement, seeking to enforce the agreement's penalty clause.[1] This clause held Armstrong to his guilty plea, but it released the State from its obligations *399 under the plea agreement (allowing it to file further charges). Armstrong moved to withdraw his guilty plea after Judge Haberly found that he violated the plea agreement by failing to appear for sentencing.
Judge Sebring heard Armstrong's motion to withdraw his plea and made several findings of fact, including: (1) Armstrong made his plea knowingly, intelligently, and voluntarily; (2) Armstrong breached the plea agreement by failing to appear at sentencing; and (3) the State did not breach the plea agreement.
Judge Sebring concluded that "under State v. Thomas, 79 Wash.App. 32, 899 P.2d 1312 (1995), the State may not file new charges if a defendant breaches a plea agreement, regardless of the language in the ... agreement... unless the State allows the defendant to withdraw his ... guilty plea[.]" Clerk's Papers at 81. Judge Sebring ruled that the State must elect to either (1) file new charges and allow Armstrong to withdraw his guilty plea or (2) hold Armstrong to his guilty plea and make a sentencing recommendation "different than the one contained in the plea agreement, including a request for an exceptional sentence." Clerk's Papers at 81. The State declined to elect either option and instead filed this appeal.
The State argues that Judge Sebring's interpretation of Thomas is incorrect and casts doubt on the enforcement provisions of every plea agreement in Kitsap County. Armstrong answers that the court correctly applied contract law. We review such questions of law de novo. State v. McCormack, 117 Wash.2d 141, 143, 812 P.2d 483 (1991), cert. denied, 502 U.S. 1111, 112 S.Ct. 1215, 117 L.Ed.2d 453 (1992).

I. Plea agreements and contract law
Plea agreements are favored by the courts. See Brady v. United States, 397 U.S. 742, 751-53, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). When "[p]roperly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).
A "plea bargain is analogous to a contract right"[2] and its terms are read as a contract.[3] But plea agreements "are more than simple common law contracts" because due process requires that the State adhere to the agreement's terms. State v. Sledge, 133 Wash.2d 828, 839, 947 P.2d 1199 (1997). In addition, fairness is required to "ensure public confidence in the administration of our justice system." Sledge, 133 Wash.2d at 839, 947 P.2d 1199.
After a party breaches the plea agreement, the non-breaching party may either rescind[4] or specifically enforce it. Thomas, 79 Wash.App. at 37, 899 P.2d 1312. The non-breaching party's choice of remedies, however, might be limited.
"For example, a defendant's choice of specific performance ... may be unfair if the violation was caused by misinformation provided by the defendant. Similarly, the choice of plea withdrawal [rescission] may be unfair if the prosecutor has detrimentally relied on the bargain and has lost essential witnesses or evidence." State v. Miller, 110 Wash.2d 528, 535, 756 P.2d 122 (1988); see also United States v. Tilley, 964 F.2d 66, 73 (1st Cir.1992) (when determining whether to permit a defendant to withdraw his guilty plea, the trial court should give consideration to whether the government "will suffer undue prejudice as result of withdrawal.").
Whenever the State elects "to rescind a plea agreement, its subsequent rights are measured by law; but when it opts to specifically enforce, its subsequent rights are necessarily measured by the agreement itself." Thomas, 79 Wash.App. at 37-38, 899 P.2d 1312.
*400 The State claims that it is seeking to enforce, not rescind, the plea agreement. Armstrong claims that the State is seeking to both rescind and specifically enforce the agreement. He argues that the agreement's terms attempt to circumvent Thomas and are inconsistent with contract law.
A. State v. Thomas
The State argues that the trial court's ruling contradicts the plain language of Thomas, 79 Wash.App. 32, 899 P.2d 1312. There, Thomas pleaded guilty to first degree rendering criminal assistance and agreed to testify against his co-defendant. Thomas, 79 Wash.App. at 33, 899 P.2d 1312. In exchange, the State agreed to recommend a sentence of twenty-nine months and not file an additional charge (robbery). Thomas, 79 Wash.App. at 42, 899 P.2d 1312.
When Thomas later refused to testify against his co-defendant, the State obtained an order declaring that he breached his plea agreement. Thomas, 79 Wash.App. at 34, 899 P.2d 1312. The State opposed and the trial court denied Thomas's subsequent motion to withdraw his guilty plea. The State then charged and convicted Thomas of the robbery.
Thomas's plea agreement provided: "The State agrees to file no further charges or sentence enhancements (and: No additional charges arising from the ... robbery[.])." Thomas, 79 Wash.App. at 39-40, 899 P.2d 1312. His agreement also provided:
[Thomas] agrees to fully and truthfully cooperate with law enforcement agents concerning their investigation of the ... robbery ... and any related unlawful activity. He further agrees to testify fully and truthfully at any trials or proceedings[.][He] further understands that he remains liable and subject to prosecution for his role in the ... robbery and any related criminal activity of which he does not fully advise agents of the State.
Thomas, 79 Wash.App. at 40, 899 P.2d 1312.
This court ruled that because of the plea agreement's "peculiar language," the State was not released from its obligations after Thomas refused to testify. Thomas, 79 Wash.App. at 41, 899 P.2d 1312. In light of the plea agreement's wording, the State could either rescind or enforce the agreement; it could not hold Thomas to his plea agreement and charge him with the robbery. Thomas, 79 Wash.App. at 41, 899 P.2d 1312. Because the State chose to enforce the agreement, it was not free to file additional charges. We dismissed the robbery conviction.
We did not address whether the State could hold a defendant to his guilty plea and file additional charges because Thomas's plea agreement did not provide such relief. Here, the State specifically inserted language in the plea agreement in response to Thomas.
Thomas does not appear to apply, except to say that the plea agreement's wording can affect its enforcement. Our holding in Thomas was merely that the terms of the contract prevail.
Because Armstrong's plea agreement had a clause requiring him to maintain his guilty plea and be punished if he breached it, this court is asked to decide whether this agreement is enforceable.
B. Analogous decisions
The State argues that a decision by the Wisconsin State Court of Appeals should control the outcome here because we cited it in Thomas, 79 Wash.App. at 38, 899 P.2d 1312 (citing State v. Toliver, 187 Wis.2d 346, 523 N.W.2d 113, review denied, 527 N.W.2d 334 (1994)).
There, Toliver was arrested for sexual assault. Toliver, 187 Wis.2d 346, 523 N.W.2d 113. He pleaded guilty to two counts of sexual assault and agreed to testify against a co-defendant. Toliver, 523 N.W.2d at 115. In exchange, the prosecution agreed to dismiss the other two counts against Toliver and recommend an agreed-upon sentence.
Toliver pleaded guilty, but refused to testify against his co-defendant. The trial court then voided the plea agreement and denied Toliver's motion to withdraw his pleas.
Toliver's plea agreement specifically provided for a penalty should he refuse to testify: "[T]his agreement shall be null and void and the State of Wisconsin will be free to *401 recommend any period of incarceration ... when [Toliver] is sentenced ... and or to proceed against him in any other charges it deems appropriate ... including the two charges of [sexual assault.]" Toliver, 523 N.W.2d at 116.
At sentencing, the State recommended a lengthier sentence than what it agreed to in the plea agreement. Toliver, 523 N.W.2d at 115. The State then charged Toliver with the two un-filed sexual assault counts, but it later dismissed them. Toliver, 523 N.W.2d at 115.
On appeal, Toliver challenged the trial court's conclusion that the State was "unilaterally and fully discharged from the terms of the plea agreement." Toliver, 523 N.W.2d at 115. He made several arguments, including that if the "plea agreement was rendered null and void by his failure to testify ..., then [it] was void as to the State and to him." Toliver, 523 N.W.2d at 116. The Wisconsin State Court of Appeals rejected Toliver's argument, refusing to "revise an unambiguous contract in order to relieve" Toliver "from any disadvantageous terms" to which he agreed. Toliver, 523 N.W.2d at 117; cf. Wash. Pub. Util. Dist. Util. Sys. v. Pub. Util. Dist. No. 1 of Clallam County, 112 Wash.2d 1, 10, 771 P.2d 701 (1989) ("The court must enforce the contract as written if the language is clear and unambiguous.").
In Thomas, 79 Wash.App. at 38, 899 P.2d 1312, we also cited to U.S. v. Tilley, 964 F.2d 66. In Tilley, the plea agreement required the defendant to "fully cooperate" with the government; upon breach, the government could elect to rescind or seek specific performance and recommend the maximum sentence. Tilley, 964 F.2d at 69. The defendant failed to perform; the government elected specific performance. The First Circuit's holding permitted the government to enforce the plea agreement according to its terms and affirmed the district court's denial of the defendant's motion to withdraw his pleas. Tilley, 964 F.2d at 71-73.
Here, the plea agreement, like the one in Toliver, is unambiguous. It specifically provided that should Armstrong fail to appear for sentencing, he would be bound by his guilty plea and the State would be released from its obligationsas to both additional charges and a sentencing recommendation. Armstrong claims no misunderstanding of the plea agreement or the consequences of entering a guilty plea. See State v. Harris, 57 Wash.2d 383, 387, 357 P.2d 719 (1960) ("Leave should ordinarily be given to withdraw a plea of guilty if it was entered by mistake or under a misconception of the nature of the charge, through a misunderstanding as to its effect[.]"). Nor has he given this court any indication that his guilty plea was anything other than voluntary or intelligent.[5] Armstrong should not have been relieved of the disadvantageous terms to which he agreed absent a manifest injustice. CrR 4.2(f); State v. Taylor, 83 Wash.2d 594, 595, 521 P.2d 699 (1974).
The State's promise to forego additional charges was conditioned on Armstrong's full compliance with the plea agreement. Armstrong's failure to comply with the agreement properly released the State from its obligation to forego additional charges and for a recommendation under the plea agreement.
Ultimately, Armstrong did not get what he wanted (to avoid the additional charges) because he violated the conditions of the agreement when he failed to appear for sentencing. But he did get what he bargained for (the State's promise to forego the additional charges if he complied with the plea agreement's terms and conditions).[6] The plea agreement did not lack mutuality of obligation as Armstrong claims. The trial court erred.
*402 C. Withdrawing a guilty plea
Furthermore, there is no legal basis for permitting Armstrong to withdraw his guilty plea. A court should allow a defendant to withdraw his guilty plea when it is necessary to correct a "manifest injustice." CrR 4.2(f). The defendant, however, must prove the manifest injustice, defined as "obvious, directly observable, overt, not obscure." Taylor, 83 Wash.2d at 596, 521 P.2d 699.
Four criteria exist for determining whether a manifest injustice exists: "`(1) denial of effective counsel, (2) plea ... not ratified by the defendant ..., (3) plea was involuntary, (4) plea agreement was not kept by the prosecution.'" Taylor, 83 Wash.2d at 597, 521 P.2d 699, (quoting WASHINGTON PROPOSED RULES OF CRIMINAL PROCEDURE, p. 50 (1971)). Armstrong does not argue any of these criteria in his brief.[7]
There is no legal basis for allowing Armstrong to withdraw his guilty plea.
Reversed and remanded for proceedings consistent with this opinion.
I concur: ARMSTRONG, C.J.
QUINN-BRINTNALL, J. (dissenting).
Although I agree with the majority's statement of the law, I disagree with the application here. In my view, ambiguity in the provisions of the Plea Agreement and the Statement of Defendant on Plea of Guilty preclude the State from filing additional charges.[8] I, therefore, dissent.
The majority properly holds that "[w]henever the State elects `to rescind a plea agreement, its subsequent rights are measured by law; but when it opts to specifically enforce [as it seeks to do in this case], its subsequent rights are necessarily measured by the agreement itself.'" Majority at 399 (quoting State v. Thomas, 79 Wash.App. 32, 37-38, 899 P.2d 1312 (1995)). Thus, I agree with the majority that the trial court erred when it concluded that Thomas prohibited the State from filing new charges when a defendant breached a plea agreement, regardless of the language in the plea agreement or the terms agreed to by the State and a defendant, unless the State allows the defendant to withdraw his or her guilty plea...." Clerk's Papers at 81 (emphasis added).
Nevertheless, I believe the majority errs when it purports to allow the wholesale filing of additional charges and states "[h]ere, the plea agreement, like the one in State v. Toliver, is unambiguous." Majority at 401. When read together the Plea Agreement and the Statement of Defendant on Plea of Guilty are ambiguous, and therefore not subject to specific performance as requested by the State.
A contract is not subject to specific performance "unless the precise act sought to be compelled is clearly ascertainable." Emrich v. Connell, 105 Wash.2d 551, 558, 716 P.2d 863 (1986). See also State ex rel. Bain v. Clallam County Bd. of County Comm'rs, 77 Wash.2d 542, 546-47, 463 P.2d 617 (1970). A contract provision is ambiguous when its terms are uncertain or when its terms are capable of being understood as having more than one meaning. Martinez v. Miller Indus., Inc., 94 Wash.App. 935, 944, 974 P.2d 1261 (1999). Additionally, a supposed promise may be illusory because it is so indefinite that it cannot be enforced, or because provisions contained in the promise make its performance optional or entirely discretionary on the part of the promisor. Spooner v. Reserve Life Ins. Co., 47 Wash.2d 454, 458, 287 P.2d 735 (1955). Here the performance the State seeks is not sufficiently ascertainable *403 from the agreement to be determined and enforced by the court.[9]
The Plea Agreement provides
NO FURTHER CHARGES: The State agrees to file no further charges or sentence enhancements for this incident that are in the exclusive jurisdiction of Kitsap County based on the discovery, including but not limited to residential burglary and harassment.
Clerk's Papers at 14.
The Plea Agreement is not incorporated fully into the Statement of Defendant on Plea of Guilty.[10] Nevertheless, under the State's specific performance theory, the defendant's guilty plea remains in full force, and the State is free to file any additional charges "based on the discovery" that it chooses.[11]
Neither the Statement of Defendant on Plea of Guilty nor the Plea Agreement specifies what charges the State is authorized to file in the event of the defendant's breach. No document consistently sets forth the actions that constitute a breach or the attendant consequences of such a breach.[12] The plea documents do not sufficiently specify the *404 charges the defendant could face in the event of a breach or provide sufficient notice to adequately inform the defendant's decision to knowingly waive double jeopardy and mandatory joinder rights. Jeopardy attaches in a guilty plea proceeding when the court accepts the plea. State v. Higley, 78 Wash. App. 172, 179, 902 P.2d 659 (1995) (citing State v. Crisler, 73 Wash.App. 219, 223, 868 P.2d 204, affirmed sub nom. State v. Gocken, 127 Wash.2d 95, 896 P.2d 1267 (1995)). See also CrR 4.3A(b) (mandatory joinder rule). Due process guarantees in our federal and state constitutions require that a guilty plea be made intelligently and voluntarily. State v. S.M., 100 Wash.App. 401, 413, 996 P.2d 1111 (2000) (citing Boykin v. Alabama, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)). But in this case, Armstrong cannot be said to have intelligently and voluntarily waived double jeopardy and mandatory joinder, for he did not know when he entered the agreement which charges he might face in the event of his breach of the agreement.
Under its interpretation of the Agreement, the only potential limit on the State's ability to file additional charges is whether support for the charge can be found in the discovery materials. Any number and combination of felony, misdemeanor, or infraction charges can find support in the police reports and witness statements provided in the typical discovery. The record does not establish that all discovery materials were before the trial court at the time the defendant entered his plea of guilty. They were, therefore, not available for review to determine the defendant's knowledge of the scope of his liability in the event he breached the Plea Agreement.
Contrary to the trial court's ruling below, it is possible for the State and a defendant to enter into an agreement that will allow for the filing of additional charges in the event of defendant's breach of a plea agreement without requiring rescission of the defendant's guilty plea. In my view, however, the provisions of the agreement before us are ambiguous and unenforceable and do not provide the State with the remedy it intended. I would reverse the interlocutory order of the trial court and remand.[13]
NOTES
[1] This clause, in relevant part, provided: "The defendant agrees that if ... [he] fails to appear for sentencing, the State is released from the obligations of this agreement, but that [he] will still be bound to the guilty plea." Clerk's Papers at 15.
[2] State v. James, 35 Wash.App. 351, 355, 666 P.2d 943, review denied, 100 Wash.2d 1023 (1983).
[3] Thomas, 79 Wash.App. at 37, 899 P.2d 1312; see also Sledge, 133 Wash.2d at 838, 947 P.2d 1199, ("[i]n analyzing this plea agreement ... we resort to basic principles of contract.").
[4] "Rescission" is available as "a remedy or defense for a nondefaulting party and restores the parties to their precontractual positions." BLACK'S LAW DICTIONARY 1308 (7th ed.1999).
[5] See CrR 4.2(d) (a trial "court shall not accept a guilty plea, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea.").
[6] Although the issue of prosecutorial recommendation of sentence is not presented here, after the defendant breaches, the State is also relieved of its obligation to make any favorable recommendation at sentencing, even though the defendant would be required to maintain his plea.
[7] First, Armstrong raised a claim of ineffective counsel in his amended motion to withdraw his plea, but he failed to make the argument on appeal. Second, Armstrong signed the plea agreement, thereby ratifying it. Finally, the trial court made factual findings that Armstrong voluntarily entered the plea agreement and that the State did not breach the agreement. Because Armstrong did not challenge these findings, they are verities on appeal. Tomlinson v. Clarke, 118 Wash.2d 498, 501, 825 P.2d 706 (1992).
[8] To date, the State has not filed an amended information with additional charges nor has Armstrong moved to dismiss those charges. The order appealed is interlocutory. It requires the State to elect between proceeding to sentencing on the initial charge or allowing Armstrong to withdraw his plea and filing additional charges. Because it is unclear what charges may be filed, the parties have not fully briefed or argued the issues. Our review of the plea provisions is, necessarily, purely preliminary.
[9] Although a general provision of the Plea Agreement, section 4, purports to relieve the State of all of its responsibilities under the plea bargain if the defendant fails to appear for sentencing, the specific provision that addresses the State's right to file additional charges is set out in section 2. Section 2 lists three conditions precedent to the filing of additional charges, none involving failure to appear for sentencing.

DEFENDANT UNDERSTANDS BY SIGNING THIS AGREEMENT:
. . . .
(2) The defendant agrees that (a) any attempt to withdraw the defendant's guilty plea, (b) any attempt to collaterally attack any conviction entered under this cause number through personal restraint petition, habeas corpus action or any other method, or (c) any violation of the cooperation agreement (if applicable) will authorize the State to file any additional count, any greater offenses, and/or any statutory enhancements that were dismissed or not filed as part of this plea agreement and that neither double jeopardy nor mandatory joinder rules will be cause for dismissal of the new charges. The parties agree that any breach of this agreement by the defendant shall not be grounds for vacating any conviction or guilty plea entered under this cause number even if the State should elect to file any additional counts, any greater offenses, and/or any statutory enhancements that were previously dismissed or not filed as part of this agreement.
Clerk's Papers at 15 (emphasis added).
(4) The defendant agrees that if any additional criminal convictions are found or if the defendant commits any new crimes or violates the conditions of release pending sentencing, or fails to appear for sentencing, the State is released from the obligations of this agreement, but that the defendant will still be bound to the guilty plea. The defendant further understands that he or she may be sentenced anew if he or she has misstated, whether intentionally or unintentionally, his or her true criminal history. The defendant further understands that the court is not bound by the recommendations in this plea agreement, and may impose any sentence permitted within the bounds of the law.
Clerk's Papers at 15 (emphasis added).
Likewise, the relevant section of the Statement of Defendant on Plea of Guilty does not expressly allow the State to be relieved of its sentencing recommendation by the defendant's failure to appear for sentencing. Section 5(d) of the Statement of Defendant on Plea of Guilty governs the conditions under which the State may be relieved of its duty to make its sentencing recommendation:
If I am convicted of any new crimes before sentencing, or if any additional criminal history is discovered, both the standard sentence range and the prosecuting attorney's recommendation may increase. Even so, my plea of guilty to this charge is binding on me. I cannot change my mind if additional criminal history is discovered even though the standard sentencing range and the prosecuting attorney's recommendation increase or a mandatory sentence of life imprisonment without the possibility of parole is required by law.
Clerk's Papers at 7.
[10] The Statement of Defendant on Plea of Guilty only once generally references the Plea Agreement, as follows: "The prosecuting attorney will make the following [sentencing] recommendation to the judge: as in attached Plea Agreement." Clerk's Papers at 8.
[11] See footnote (2) for text of provisions.
[12] Apparently the State interprets the Agreement to provide that the defendant's failure to appear for sentencing, a violation of section 4, authorizes it "to file any additional count, any greater offenses, and/or any statutory enhancements that were dismissed or not filed as part of this plea agreement and that neither double jeopardy nor mandatory joinder rules will be cause for dismissal of the new charges," as set forth in section 2. See Clerk's Papers at 15. The State also argues that Armstrong agreed that his breach of the agreement would not be grounds for vacating any conviction or guilty plea even if the State elects to file any additional charges: the defendant "will still be bound to the guilty plea" (section 4), and "any breach of this agreement by the defendant shall not be grounds for vacating any conviction or guilty plea entered under this cause number" (section 2). Clerk's Papers at 15. The agreement sets forth specific examples of breach by the defendant that would free the State to file additional charges in section 2, but then purports to allow the State to file additional charges if the defendant breaches the agreement in any way in section 4.
[13] In my review, Armstrong should have been sentenced on the charges to which he has pleaded guilty. The State then would elect whether to file additional charges. And Armstrong could have moved to dismiss any additional charges. The parties would then have had a proper opportunity to brief and argue their respective positions in context, and a proper record would exist for possible review.