# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON | ) | No. 38217-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | ORDER DENYING MOTION |
| | ) | FOR RECONSIDERATION, |
| v. | ) | GRANTING MOTION FOR |
| | ) | CLARIFICATION AND |
| | ) | WITHDRAWING OPINION FILED |
| DARREN STANLEY HARRIS, | ) | APRIL 27, 2023 |
| | ) | |
| Appellant. | ) | |

THE COURT has considered the State's motions for reconsideration and clarification, the response thereto, and the file herein, and is of the opinion the motions should be denied in part and granted in part. Therefore,

IT IS ORDERED, the motion for reconsideration of this court's decision of April 27, 2023, is hereby denied, and the motion for clarification of this court's decision of April 27, 2023, is hereby granted.

IT IS FURTHER ORDERED, the court's opinion filed April 27, 2023, is hereby withdrawn and a new opinion will be filed this day.

PANEL: Judges Siddoway, Fearing, Lawrence-Berrey

FOR THE COURT:

_George Fearing_____
George B. Fearing
Chief Judge

**FILED**
**JULY 25, 2023**
**In the Office of the Clerk of Court**
**WA State Court of Appeals Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38217-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DARREN STANLEY HARRIS, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Darren Harris, having been granted an extension of time to file a direct appeal of his 2012 convictions of second degree murder and first degree robbery, asks us to order resentencing. He points out that he was only 17 years old at the time of the offenses, and since *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017), had not yet been decided, the sentencing court failed to consider the mitigating factors of youth before imposing his sentence.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38217-6-III
*State v. Harris*

Mr. Harris's convictions were the result of a negotiated guilty plea, however, and the State contends that Mr. Harris agreed to the sentence terms that were recommended by both parties. The State argues that if Mr. Harris asks a resentencing court to consider mitigating qualities of his youth, it will be a breach, entitling the State to rescind the plea agreement.

Mr. Harris's counsel responded that it was not clear Mr. Harris had bound himself to support the State's sentencing recommendation, as a result of which we ordered a reference hearing that has confirmed the State's characterization of the plea agreement.

Given that this is a direct appeal, Mr. Harris is entitled to a remedy unless the State can demonstrate constitutional harmless error, which it fails to do. We conclude that Mr. Harris is entitled to a remedy, but the appropriate remedy is a ruling that Mr. Harris may move to withdraw his guilty plea.

## FACTS AND PROCEDURAL BACKGROUND

The State charged Mr. Harris with first degree murder and a deadly weapon enhancement for a fatal stabbing committed in 2011, less than two months before Mr. Harris's 18th birthday. Given Mr. Harris's criminal history of one prior conviction (a juvenile third degree assault), he faced a standard range of 240 to 320 months in prison, with an additional 48 months for the deadly weapon enhancement.

The parties engaged in plea negotiations that resulted in Mr. Harris pleading guilty a little over a year later to a reduced charge of second degree murder while armed with a

2

No. 38217-6-III
*State v. Harris*

deadly weapon, and first degree robbery. The standard ranges were 142 to 244 months for the murder and 41 to 54 months for the robbery. The parties agreed to recommend a sentence of 220 months for the second degree murder, with 24 months for the deadly weapon enhancement, and 54 months for the robbery, to run concurrently. The result would be total confinement of slightly over 20 years, rather than what could have been as much as an almost 31-year standard range sentence as originally charged.

At the plea hearing, the prosecutor was asked about the proposed amendment to the information and answered that "it's based on the resolution that we reached," which "would be an agreed recommendation." Rep. of Proc. (RP) at 4-5. Defense counsel did not object to the "agreed recommendation" characterization.

Mr. Harris confirmed to the judge that he had provided the following statement of his crime, and that it was true:

> [O]n July 2nd, 2011, in Yakima County, State of Washington, I stabbed to death Luis Negrete Morales while we were sitting in the front seat of his vehicle while parked in the driveway of my mother's home. I then took his wallet for the money in it, without the permission of Luis Negrete Morales.

RP at 12. The prosecutor supplemented that summary with additional information. He told the court that Mr. Morales had been discovered fatally wounded in his truck outside a home at around 4:45 a.m. He had been stabbed approximately 21 times, with 15 of the wounds around the face and neck area. Six wounds in the left arm area were identified in the autopsy as defensive wounds.

3

No. 38217-6-III
*State v. Harris*

Mr. Harris and a woman, Marissa Vega, quickly became suspects based on pictures found on Mr. Morales's phone. Mr. Harris and Ms. Vega were located in Yakima and arrested, and provided statements in which they admitted they were with Mr. Morales, drinking and doing drugs, on the evening of July 1 into the morning of July 2. Mr. Harris provided two differing versions of how he inflicted Mr. Morales's wounds, but admitted he inflicted them. He admitted that afterward, he had taken Mr. Morales's wallet, which contained $60.

Sentencing followed immediately after the court accepted Mr. Harris's guilty plea. The prosecutor reiterated as his sentencing recommendation that "[w]e have agreed . . . on the two hundred- and forty-four-month range." RP at 37. Again, defense counsel did not object to the characterization of the recommendation as "agreed." Asked for the defense recommendation, defense counsel said, "Your Honor, we would urge the Court to follow the recommendation. This was a heavily negotiated plea." RP at 38. He pointed out that Mr. Harris had been "caught immediately," that "[t]here's been a great deal of heavy litigation about this negotiation," and "[c]onsidering the totality of the circumstances, we think this is an appropriate charge and sentence for that charge." *Id.* Mr. Harris declined to make any statement.

The judge imposed the recommended sentence. Mr. Harris did not timely appeal.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38217-6-III
*State v. Harris*

PERSONAL RESTRAINT PETITION AND APPEAL

In April 2020, Mr. Harris filed a personal restraint petition (PRP) seeking a resentencing at which the mitigating qualities of youth could be considered, in light of *State v. Houston-Sconiers* and *State v. Ramos*, 187 Wn.2d 420, 387 P.3d 650 (2017). This court dismissed the petition as frivolous, reasoning that *Houston-Sconiers* did not apply retroactively and, even if it did, Mr. Harris had provided no mitigating evidence.[1] The Supreme Court denied review, affirming this court's opinion.[2] The high court's deputy commissioner observed, as this court's acting chief judge had, that Mr. Harris had presented "essentially no evidence at all" that the sentencing court would have exercised its discretion to depart from the standard range or the mandatory weapon enhancement in light of *Houston-Sconiers*. Ruling Den. Review, *In re Pers. Restraint of Harris*, No. 98675-4, at 2 (Wash. Aug. 18, 2020).

Mr. Harris then filed a notice of appeal. He responded to the State's motion to dismiss it as untimely with a motion to extend time for filing, supported by a declaration explaining that he was never told he had a right to an appeal and was instead advised that he had no right to appeal a standard range sentence. Because the State could not

---

[1] Order Dismissing Pers. Restraint Pet., *In re Pers. Restraint of Harris*, No. 37530-7-III (Wash. Ct. App. June 2, 2020) (on file with court).

[2] Ruling Den. Review, *In re Pers. Restraint of Harris*, No. 98675-4 (Wash. Aug. 18, 2020) (on file with court).

5

No. 38217-6-III
*State v. Harris*

demonstrate that Mr. Harris understood his right to appeal and made a knowing,
voluntary, and intelligent waiver of that right, Mr. Harris's motion was granted.

ARGUMENT ON APPEAL AND REFERENCE HEARING

Mr. Harris's opening brief on appeal assigned error to the fact that he was
sentenced "without the constitutionally required consideration of the mitigating qualities
of youth." Appellant's Opening Br. at 1. He asked us to "reverse, vacate [his] sentence,
and remand for resentencing." *Id.* at 8. The State responded that by agreeing to a
specific sentence within the standard range, Mr. Harris implicitly agreed not to seek a
lesser sentence or exceptional sentence, and for Mr. Harris to present evidence and
argument in support of mitigation would undermine the agreed-upon sentencing
recommendation. It argued that in order for Mr. Harris to obtain his desired remedy, he
must first move to withdraw his guilty plea. In reply, Mr. Harris argued that while the
State had shown that he joined in the State's sentence recommendation, it failed to show
that he ever bound himself in a way that would limit his freedom to seek a lesser
sentence.

The panel requested additional briefing and thereafter ordered a reference hearing
at which the court was directed to determine whether in communications leading to the
guilty plea, Mr. Harris had signified agreement to join in the State's sentencing
recommendation and not seek a lesser sentence. We directed the reference hearing court
to identify the evidence supporting its findings.

6

No. 38217-6-III
*State v. Harris*

Following a hearing at which the reference hearing court was presented with declarations from the trial attorneys, their written communications leading to the plea agreement, and a declaration and live testimony from Mr. Harris, the reference hearing court found that Mr. Harris *had* signified agreement to join in the State's recommendation and not seek a lesser sentence. Among the evidence identified by the court as supporting the findings was the declaration from Mr. Harris's trial lawyer in which he stated that he believed it would have been a breach of the plea agreement to argue for a sentence below the State's 244-month recommendation.

ANALYSIS

I.     THE PARTIES AGREED TO JOINTLY RECOMMEND A SENTENCE OF TOTAL
       CONFINEMENT OF 244 MONTHS

Under CrR 4.2(e), "[t]he nature of the plea agreement and the reasons for the agreement shall be made a part of the record at the time the plea is entered." RCW 9.94A.431(1) provides that the prosecutor and the defendant "shall at the time of the defendant's plea state to the court, on the record, the nature of the agreement and the reasons for the agreement." While a written statement on plea of guilty is required, there is no requirement for a written plea agreement.

At the time Mr. Harris entered his plea, the nature of the agreement was never described as anything *but* an agreed recommended sentence. Appellate counsel's argument that Mr. Harris nevertheless might not have bound himself not to seek a lesser

7

No. 38217-6-III
*State v. Harris*

sentence was good cause for ordering a reference hearing, however. That argument has

been refuted by the reference hearing findings.

II.      THE APPROPRIATE REMEDY IS TO RECOGNIZE THAT MR. HARRIS IS ENTITLED
         TO MOVE TO WITHDRAW HIS GUILTY PLEA

*At the time of the 2012 sentencing, Mr. Harris's youth was potentially
relevant and could have been considered*

Under the law in effect at the time of the parties' 2012 negotiations and plea

agreement, Mr. Harris's youth could have been urged as relevant to sentencing.

RCW 9.94A.535(1)(e) had always provided the opportunity to raise youth for the purpose

of requesting an exceptional sentence downward, and mitigation based on youth was

within the trial court's discretion. *In re Pers. Restraint of Light-Roth*, 191 Wn.2d 328,

336, 422 P.3d 444 (2018). In its 1997 decision in *State v. Ha'mim*, 132 Wn.2d 834, 940

P.2d 633, *abrogated in part by State v. O'Dell*, 183 Wn.2d 680, 358 P.3d 359 (2015), the

Washington Supreme Court had held that age *per se* was not a mitigating factor, but it

could be relevant to whether the defendant's capacity to appreciate the wrongfulness of

his or her conduct or conform that conduct to the requirements of the law was

significantly impaired. *Light-Roth*, 191 Wn.2d at 334 (citing *Ha'mim*, 132 Wn.2d at

847). What was required was that youthfulness relate to the commission of the crime.

*Id.* at 336 (citing *Ha'mim*, 132 Wn.2d at 846).

At the time of the State's and Mr. Harris's negotiation, the United States Supreme

Court had already decided *Roper v. Simmons*, 543 U.S. 551, 569-70, 125 S. Ct. 1183, 161

8

No. 38217-6-III
*State v. Harris*

L. Ed. 2d 1 (2005), *Graham v. Florida*, 560 U.S. 48, 76, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), and *Miller v. Alabama*, 567 U.S. 460, 481, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), in which the Court had discussed modern brain science and its ramifications for youthful culpability. It had been more than 7 years since *Roper* had described three differences between juveniles under 18 and adults that demonstrate juveniles' reduced culpability: an underdeveloped sense of responsibility that "'often result[s] in impetuous and ill-considered actions and decisions'"; juveniles' greater vulnerability or susceptibility to negative influences and outside pressures; and the fact that juveniles' character and personality traits are more transitory, less fixed. *Roper*, 543 U.S. at 569-70 (quoting *Johnson v. Texas*, 509 U.S. 350, 367, 113 S. Ct. 2658, 125 L. Ed. 2d 290 (1993)). These differences meant, according to the Supreme Court, that the irresponsible conduct of a juvenile "is not as morally reprehensible as that of an adult," giving them "a greater claim than adults to be forgiven." *Id.* at 570.

The State submits that given then-existing law, and "a plea agreement that reduce[d] the charge from first to second degree murder, it is highly likely that the defendant's youth and culpability were factors in the heavily negotiated plea agreement." Suppl. Br. of Resp't at 2.

9

No. 38217-6-III
*State v. Harris*

> *For Mr. Harris to seek a sentence of less than 244 months will breach*
> *his plea agreement*

For Mr. Harris at any resentencing to explicitly or implicitly seek a sentence of

less than 244 months will breach his plea agreement, and the State is clear on appeal that

it will elect to rescind the agreement.[3]

"'Plea agreements are contracts.'" *State v. Sledge*, 133 Wn.2d 828, 838, 947 P.2d

1199 (1997) (quoting *State v. Mollichi*, 132 Wn.2d 80, 91, 936 P.2d 408 (1997)). In

*Sledge*, the Washington Supreme Court held that "[j]ust as there is an implied duty of

good faith and fair dealing in every contract," the law imposed an implied promise by the

State to act in good faith in the plea agreement it had made in that case. *Id.* at 839. The

duty of good faith includes the obligation to make a promised sentencing

recommendation. *Id.* at 840. Of this duty, the court in *Sledge* explained:

---

[3] The State has the option, if a defendant breaches a plea agreement, to specifically enforce or rescind the agreement. *State v. Thomas*, 79 Wn. App. 32, 36-37, 899 P.2d 1312 (1995). If the State wished to specifically enforce a plea agreement under the circumstances presented here, its briefing would need to address how, consistent with specific enforcement, the defendant can have his desired resentencing at which *Houston-Sconier*'s substantive and procedural rules will be applied. *And see State v. Gilbert*, 193 Wn.2d 169, 176-77, 438 P.3d 133 (2019). Specific enforcement would have to be consistent with the defendant's understanding of the plea agreement's consequences at the time of the entry of the plea. *Thomas*, 79 Wn. App. at 39. For a plea agreement made before *Houston-Sconiers*, a defendant could not have understood at the time of the plea that anything in his agreement was waiving what were as-yet unannounced Eighth Amendment to the United States Constitution rights.

In this case, the State did not address these thorny issues. Instead, it opposed resentencing as undermining Mr. Harris's plea agreement, thereby signaling its intention to elect rescission.

10

No. 38217-6-III
*State v. Harris*

> The recommendation need not be made "enthusiastically." The prosecutor, as an officer of the court, is obliged to participate in the sentencing proceedings, candidly answering the court's questions in accordance with RPC 3.3, and holding back no relevant information regarding the plea agreement. *See, e.g.*, RCW 9.94A.460 (State may not agree to withhold relevant information from court regarding plea agreement).

> At the same time, however, the State has a concomitant duty not to undercut the terms of the agreement explicitly or by conduct evidencing an intent to circumvent the terms of the plea agreement.

*Id.* at 840 (citation omitted).

The State argued in *Sledge* that it had not breached its agreement to recommend a standard range confinement because evidence of Sledge's "unremitting criminality" that it presented through two witnesses was cumulative of information that would already be before the court at sentencing. *Id.* at 832, 842. This court was unpersuaded that it was not a breach, explaining that "if it was the State's purpose to have the trial court adopt its standard range recommendation," there was no need to put the additional information about aggravating circumstances before the court. *Id.* at 842.

The standard for determining whether a plea agreement is breached is an objective one. *State v. Van Buren*, 101 Wn. App. 206, 213, 2 P.3d 991 (2000); *see also Sledge*, 133 Wn.2d at 843 n.7 ("The focus of this decision is on the effect of the State's actions, not the intent behind them."). "The test is whether the prosecutor contradicts, by word or conduct, the State's recommendation for a standard range sentence." *State v. Jerde*, 93 Wn. App. 774, 780, 970 P.2d 781 (1999) (citing *State v. Talley*, 134 Wn.2d 176, 187, 949 P.2d 358 (1998)).

No. 38217-6-III
*State v. Harris*

A defendant owes the same duty of good faith performance of a plea bargain. The defendant will breach an agreement that his criminal history is correctly stated and scored if he takes the position at sentencing that his out-of-state convictions are not comparable to Washington crimes and that "it [is] up to the court to calculate the offender score correctly, notwithstanding his plea agreement." *State v. Collins*, 144 Wn. App. 547, 552, 182 P.3d 1016 (2008). When this occurred in *Collins*, the trial court properly allowed the State to rescind the plea agreement and reinstate the defendant's original charge. *Id.* at 553.

Washington case law includes a number of examples of *the State* nominally abiding by a sentencing recommendation but undercutting it in substance. *E.g.*, *Van Buren*, 101 Wn. App. at 216-17 (once the State sensed the court was considering an exceptional sentence, it downplayed the agreed recommendation and pointed out aggravating factors); *State v. MacDonald*, 183 Wn.2d 1, 20, 346 P.3d 748 (2015) (investigating officer's unsolicited testimony attacked each point favoring the plea agreement); *State v. Carreno-Maldonado*, 135 Wn. App. 77, 80-81, 86, 143 P.3d 343 (2006) (where prosecutor spoke at sentencing of the "heinous" and "violent" crimes against "vulnerable" victims and justified it as being "on behalf of the victims," the advocacy was a breach).

Washington case law addressing a defendant's breach of a plea agreement predominantly involves other sorts of breaches, but cases from other jurisdictions provide

12

No. 38217-6-III
*State v. Harris*

examples of the government's right to rescind when the defendant breaches a

commitment to a sentencing range. In *United States v. Yusuf*, 993 F.3d 167 (3d Cir.

2021), for example, two defendants were found to have breached the terms of plea

agreements under which they agreed not to argue for a sentence outside the range

recommended by the United States Sentencing Guidelines. The first defendant,

Campbell, argued that he did not breach the agreement because he simply encouraged

the court to apply factors the sentencing court was permitted to consider under 18 U.S.C.

§ 3553(a), without raising any issue as to the guidelines' range. The Third Circuit found

the argument "wholly unpersuasive," explaining:

> "[N]othing in the plea agreement prevented the District Court from
> departing downwardly or imposing a non-Guideline sentence on its own
> accord. The plea agreement did not purport to restrict the Court's duty to
> consider the § 3553 factors. Rather, the agreement merely prohibited [the
> defendant] from making arguments regarding those issues. If [the
> defendant] wanted to make a departure argument, it would have been
> prudent to negotiate a different agreement with the government."

*Yusuf*, 993 F.3d at 178-79 (alterations in original) (quoting *United States v. Williams*, 510

F.3d 416, 425-26 (3d Cir. 2007)).

The circumstances of the second defendant, Yusuf, presented a closer case,

because Yusuf's breach was to call attention to the very low sentence received by his

coconspirator, which was a fact the sentencing court was entitled to know and consider.

The Third Circuit still found a breach, however:

13

No. 38217-6-III
*State v. Harris*

> [H]ere Yusuf did more than merely present a fact. He went on to
> affirmatively advocate for a sentence below the agreed upon guidelines
> range. The distinction may be a fine one, but it is important. Had Yusuf
> only informed the District Court of [his coconspirator]'s sentence and
> reminded the Court that he was bound by the plea agreement, the Court
> may well have intuited the argument that was left unsaid. But leaving it
> unsaid is the difference between breaching and not breaching the
> agreement.

*Id.* at 181 (citation omitted).

Having agreed to make a joint recommendation of a 244-month sentence, Mr.

Harris would be in breach, and the State would be entitled to rescind, if Mr. Harris were

to present evidence or argument at a resentencing that qualities of his youth at the time of

the crime made 244 months a disproportionate sentence.

> *A resentencing that complies with* Houston-Sconiers *not only presents a
> prospect of breach, but also substantially frustrates the State's purpose in
> making the agreement*

In *Houston-Sconiers*, the Washington Supreme Court held that the Eighth

Amendment to the United States Constitution requires criminal courts to recognize that

certain sentences routinely imposed on adults may be disproportionately harsh when

imposed on youth, requiring that courts dealing with juveniles exercise sentencing

discretion. Extending reasoning that the United States Supreme Court had applied in

*Roper*, *Graham*, and *Miller*, *Houston-Sconiers* held that "sentencing courts must have

complete discretion to consider mitigating circumstances associated with the youth of any

14

No. 38217-6-III
*State v. Harris*

juvenile defendant" and "to impose any sentence below the otherwise applicable SRA[4]

range and/or sentencing enhancements." *Houston-Sconiers*, 188 Wn.2d at 21. It held

that the court must affirmatively consider "age and its 'hallmark features.'" *Id.* at 23.

Courts must also consider how environmental factors and circumstances affected the

juvenile's participation in the crime, any legal defense, and any factors suggesting the

child might be successfully rehabilitated. *Id.*

A new rule for the conduct of criminal prosecutions is to be applied retroactively

to all cases, state or federal, pending on direct review or not yet final, with no exception

for cases in which the new rule constitutes a clear break from the past. *State v. Evans*,

154 Wn.2d 438, 444, 114 P.3d 627 (2005) (quoting *In re Pers. Restraint of St. Pierre*,

118 Wn.2d 321, 326, 823 P.3d 492 (1992) (citing *Griffith v. Kentucky*, 479 U.S. 314, 328,

107 S. Ct. 708, 93 L. Ed. 2d 649 (1987), and *Teague v. Lane*, 489 U.S. 288, 311, 109 S.

Ct. 1060, 103 L. Ed. 2d 334 (1989))). Accordingly, it is to be applied retroactively to Mr.

Harris's case. The State does not dispute that the consideration of Mr. Harris's age

required by *Houston-Sconiers* did not occur at Mr. Harris's sentencing, but it argues that

the error was harmless, and alternatively, that the remedy to which Mr. Harris is entitled

to move to withdraw his guilty plea.

The State is unable to show that the error was harmless. Harmless-error review

for a constitutional sentencing error turns on whether the error "'was harmless beyond a

---

[4] Sentencing Reform Act of 1981, ch. 9.94A RCW.

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38217-6-III
*State v. Harris*

reasonable doubt' in that it 'did not contribute to the [sentence] obtained.'" *Sochor v. Florida*, 504 U.S. 527, 539, 112 S. Ct. 2114, 119 L. Ed. 2d 326 (1992) (alteration in original) (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)).  Stated another way, harmless-error review for a sentencing error requires a determination of whether the error "would have made no difference to the sentence." *Parker v. Dugger*, 498 U.S. 308, 319, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In this case, we have no way to know what information the sentencing court's compliance with *Houston-Sconiers* would have yielded, and therefore no way to assess whether it would have made a difference.

While Mr. Harris demonstrates that application of *Houston-Sconiers* to his late appeal gives rise, retroactively, to error, the contractual remedy a defendant desires in the plea agreement context is not always the appropriate remedy.  *E.g.*, *State v. Barber*, 170 Wn.2d 854, 873, 248 P.3d 494 (2011) (When, as a result of mutual mistake, a plea agreement commits the parties to an illegal sentence, withdrawal of the defendant's plea is the only remedy.).  There are two reasons why ordering resentencing is not an appropriate remedy in this case.

First, Mr. Harris has failed to explain how a resentencing would be conducted that would not place him at risk of breaching and losing his favorable plea agreement.  An unpublished 2021 opinion from Division Two of this court involving a somewhat-similarly-situated defendant illustrates the foreseeable problems in any remand.  The

16

No. 38217-6-III
*State v. Harris*

appellant in that case, Christopher Holt, committed murder as a juvenile in 2008. *State v. Holt*, No. 53122-4-II, slip op. at 1 (Wash. Ct. App. July 20, 2021) (unpublished).[5] He agreed to plead guilty to second degree murder and was a party to a jointly agreed 216-month sentencing recommendation that was followed by the court. *Id.* After *Houston-Sconiers* was decided, Holt filed a CrR 7.8 motion seeking resentencing. *Id.* at 3, 6. His motion was denied and he filed an appeal that a Division Two panel converted for consideration as a PRP. In the trial court, Holt had argued that after *Houston-Sconiers*, he was entitled to be "resentenced at a hearing in which he is allowed to present witness testimony and other evidence of his youth and his post-conviction behavior," at the same time insisting that he would avoid breaching his plea agreement by continuing to recommend a 216-month sentence. *Id.* at 11.

As Judge Anne Cruser observed in a concurring opinion, Holt's assertion that he did not plan to seek a different sentence from the sentence agreed in 2008,

> strains credulity. As part of his CrR 7.8 motion, he submitted a letter to the trial court from his wife Rebecca in which she asked the trial court to change Holt's sentence. She said, "I ask that you please let him come home to his wife and his kids." Holt himself, in his letter to the trial court, suggested that . . . he might receive a different sentence when he said "*And even if* I must finish my remaining 7 years . . . ."

---

[5] Available at https://www.courts.wa.gov/opinions/pdf/D2%2053122-4-II%20Unpublished%20Opinion.pdf.

As an unpublished opinion, *Holt* has no precedential value, is not binding on any court, and is cited only as illustrative of the prospect that resentencing will result in a breach. *See* GR 14.1.

17

No. 38217-6-III
*State v. Harris*

*Id.* at 16 n.10 (Cruser, J., concurring) (record citations omitted).  Both the majority and

the concurring opinions observed that the State would presumably be entitled to respond

with aggravating considerations, resulting in a process "clearly not in line" with the

parties' 2008 agreement.  *Id.* at 13, 19 n.12.  The majority held that for Holt to obtain his

desired remedy he needed to withdraw his guilty plea; Judge Cruser would have held

(albeit in the context of a PRP) that Holt had not demonstrated entitlement to any Eighth

Amendment remedy.  *Id.* at 11, 17.

A second reason why resentencing is not an appropriate remedy is that the State

should not be required to go forward with a sentencing process materially different from

what the parties bargained for in 2012.

Mr. Harris is demanding a resentencing at which he will receive "meaningful

consideration of youth," which he contends requires consideration of his

> immaturity, impetuosity, and failure to appreciate risks and consequences—
> the nature of [his] surrounding environment and family circumstances, the
> extent of [his] participation in the crime, the way familial and peer
> pressures may have affected him, . . . how youth impacted any legal
> defense, and any factors suggesting that [he] might be successfully
> rehabilitated.

Appellant's Opening Br. at 4-5.

A party to a contract is entitled to rescind when an extraordinary circumstance

makes performance so vitally different from what was reasonably to be expected as to

alter the essential nature of that performance.  *Wash. State Hop Producers, Inc.*

18

No. 38217-6-III
*State v. Harris*

*Liquidation Tr. v. Goschie Farms, Inc.*, 51 Wn. App. 484, 488, 754 P.2d 139 (1988),

*aff'd*, 112 Wn.2d 694, 773 P.2d 70 (1989). The contractual purpose that is frustrated

must have been a principal purpose of the party without which the transaction would

make little sense. *Wash. State Hop Producers, Inc., Liquidation Tr. v. Goschie Farms,*

*Inc.*, 112 Wn.2d 694, 701, 773 P.2d 70 (1989) (citing RESTATEMENT (SECOND) OF

CONTRACTS § 265, cmt. (a) (AM. LAW INST. 1979)). An "agreement" under which Mr.

Harris could exact a 10-year reduction in his recommended sentence based on mitigating

factors and retain the right to re-argue mitigation as a basis for further reduction by the

sentencing court would—for the State—make no sense.

An unpublished opinion from Division One of this court provides an example of

the different sort of terms the State is likely to require from a juvenile defendant after

*Houston-Sconiers. See State v. Ortiz*, No. 81363-3-I, slip op. at 7-8 (Wash. Ct. App.

June 15, 2020).[6] Ortiz was charged with a first degree murder committed when he was

17 years old. Recognizing that the sentencing court would be required to consider

mitigating factors, the plea agreement contemplated that Ortiz would argue for a sentence

of the low end of the sentencing range, while the State would argue for a high-end

sentence. *Id.* at 2-3. The parties agreed that Ortiz would not seek an exceptional

---

[6] Available at https://www.courts.wa.gov/opinions/pdf/813633.pdf.
Again, as an unpublished opinion, *Ortiz* has no precedential value, is not binding on any court, and is cited only as illustrative of plea agreement terms agreed with a juvenile following *Houston-Sconiers. See* GR 14.1.

19

No. 38217-6-III
*State v. Harris*

downward departure based on any of the factors set out in *Houston-Sconiers*, and the

State represented to the court:

> The State and defense negotiated the present plea resolution that
> allows the State to argue for high end and [Ortiz] to argue for low end of
> the standard range. The court should understand, however, the so-called
> *Houston-Sconiers* factors (related to [Ortiz's] youth) have been specifically
> considered by the State and defense in negotiating the case and the defense
> has agreed not to use these factors as a basis for recommending an
> exceptional sentence downward.

*Id.* at 7-8 (alterations in original). The Division One panel observed in affirming Ortiz's

sentence that "[i]t is well established that a defendant may waive the ability to request an

exceptional sentence as a part of a plea agreement." *Id.* at 8 (citing *State v. Lee*, 132

Wn.2d 498, 506, 939 P.2d 1223 (1997)).

We will not order a requested remedy that invites a breach by Mr. Harris and

substantially frustrates the State's purpose in negotiating his guilty plea.

*The appropriate remedy in this case is to recognize Mr. Harris's right
to move to withdraw his guilty plea*

Mr. Harris is not without an adequate remedy. Now that he knows we will not

order resentencing, he is entitled to the opportunity to move to withdraw his plea.

*Cf. State v. Walsh*, 143 Wn.2d 1, 6-7, 17 P.3d 591 (2001) (defendant's right to move to

withdraw his plea was not waived where he was pursuing his hoped-for remedy of

specific performance) (citing *State v. Skiggn*, 58 Wn. App. 831, 795 P.2d 169 (1990)).

20

No. 38217-6-III
*State v. Harris*


We hold that Mr. Harris will not waive his remedy of moving to withdraw his plea if he moves to withdraw it within 60 days of the filing of the mandate.

 Affirmed.

_____
Siddoway, J.

WE CONCUR:


_____
Fearing, C.J.


_____
Lawrence-Berrey, J.